F. C. STEELE & others *vs.* MUNICIPAL SIGNAL COMPANY
& another.

Hampden.   September 27, 28, 1893. — October 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Equity Jurisdiction — Bill by Taxpayers — City — Contract.*

A bill by taxpayers of a city cannot be maintained, under the general equity juris-
diction of the court, to restrain the city from carrying out an alleged invalid
contract.

BILL IN EQUITY, filed in the Superior Court by the plaintiffs,
as taxpayers of the city of Holyoke, against the Muncipal Signal
Company, a corporation, and the city, to restrain the putting in
of a police signal system for the city, under an alleged contract
signed by certain members of the police committee of the board
of aldermen of the city.   The case was heard by *Dewey,* J., and
reported for the determination of this court, in substance as
follows.

It appeared that, on March 15, 1892, the following order was
adopted by the city council of Holyoke: " City of Holyoke.
In Board of Aldermen, March 15, 1892.   Ordered, the board of
councilmen concurring, that the committee on police be and they
hereby are authorized and instructed to advertise for bids for fur-
nishing and equipping the city with a police telegraph system and
to award the contract for the same."   This order was adopted
on the same day in the board of aldermen, and concurred in by
vote of the common council, but not by a yea and nay vote.   On
May 3, 1892, the committee of the board of aldermen to whom
the matter was referred by the above order made the following
report:  " City of Holyoke.   In Board of Aldermen, May 3d,
1892.   The committee on police to whom was referred the matter
of a police signal system have considered the same, and report
that they have awarded the contract to the Municipal Signal
Company as per bids submitted, provided the city council passes
an order providing for the payment of the expenses to be in-
curred therefor.   Signed, Michael Connors, M. J. Laporte, A.
Higginbottom, Committee on Police."   On the same day, the

report was accepted by the board of aldermen and sent to the common council for concurrence, and on the same day the common council concurred in the acceptance thereof. Michael Connors, M. J. Laporte, and A. Higginbottom constituted the committee on police of the city during the municipal year of 1892. On the same day the following order was adopted in the board of aldermen: " Ordered, the board of common councilmen concurring, that of the moneys to be paid into the treasury for liquor licenses the sum of $10,000 be applied to and used for equipping the city with a police system, the erection of a barn, and the purchase of a patrol wagon with horses, in connection with such system," which order was thereupon sent down on the same day to the common council for concurrence. The common council non-concurred therewith, and it came back on the same day to the board of aldermen, which board voted to adhere to its former action, and request the concurrence of the common council in the same order. No further action was taken thereupon until May 17, 1892, when the common council voted to adhere to its former action in non-concurring in the adoption of the order, and sent the same up for concurrence therewith on the part of the aldermen. The same evening the board of aldermen voted to adhere to its former action in the adoption of the order, and again asked the common council to concur. The common council still adhered to its former action in non-concurring, and asked for a committee of conference, which was agreed to, and a conference committee was appointed on June 7. The committee of conference reported that there was not remaining in the license fund an amount sufficient for the purpose, and therefore no further action could be taken in that direction for obtaining funds for the purpose, which report was received in the board of aldermen and sent down to the common council, which refused to concur. On the same day, June 7, 1892, a paper purporting to be a report of the committee on police, signed by two members thereof, was presented to the city government, the material part of which was in the following terms: " The committee on police hereby make an additional report, that, under authority of an order passed by concurrent vote of the city council and approved by the Mayor, March 15, 1892, a contract has been made with the Municipal Signal Company of Boston for the equipment of.

the city with a police signal system. The contract price is $6,975, one half to be paid on February 1, 1893, and one half on January 1, 1894, the latter half to draw interest at six per cent from the time of payment. . . . For the committee, A. Higginbottom, M. J. Laporte." In the board of aldermen it was voted, on the same day, that the report be placed on file, and sent down to the common council for concurrence. The common council postponed consideration of the matter, and no further action was taken thereon. Michael Connors, the chairman of the committee, was not present at the meeting of the committee when the above action was taken, and was not notified of such meeting, and did not know that it was to be held. It was the custom in the committee for meetings to be called by the chairman, and the committee had a clerk whose duty it was to give notice of meetings. On the same day two members of the committee, without the knowledge or consent of Connors, undertook to make and sign on behalf of the city a contract with the defendant corporation for a system of police signals which required the erection of poles throughout public squares and streets of the city, and the stringing wires thereon through such streets and public places, and the payment therefor of the sums stated in the above cited report; and, before the filing of this bill, the corporation had entered upon the execution of the work.

Such decree was to be entered as to the court should seem proper.

*G. Wells & J. Barnes*, for the plaintiffs.

*L. G. Farmer*, for the Municipal Signal Company.

ALLEN, J. This suit is not brought under Pub. Sts. c. 27, § 129, no such vote having been passed as is there contemplated. But the plaintiffs seek to maintain their bill under the general equity jurisdiction of the court. A difference of opinion has existed elsewhere whether it is within the general scope of the jurisdiction of a court of equity to entertain a suit by individual taxpayers to restrain cities and towns from carrying out invalid contracts, and performing other similar wrongful acts. 2 Dillon, Mun. Corp. (4th ed.) §§ 914 *et seq.* In Massachusetts it can hardly be considered an open question, it having been involved in the decision of *Baldwin* v. *Wilbraham*, 140 Mass. 459. As-

suming that the full general equity jurisdiction of the court is unlimited by the retention of the provision of Pub. Sts. c. 27, § 129, still, according to the decision in *Baldwin* v. *Wilbraham*, the subject of this suit is outside of that jurisdiction.

*Bill dismissed.*