HENRY H. SYLVESTER & others *vs.* GEORGE H. WEBB
& others.

Plymouth.    May 23, 1901. — June 1, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Contract*, Validity. *Municipal Corporation*, Officers and Agents. *Agency*, Ratification.

A contract for the building of a schoolhouse, made by a town with a contractor, who is also one of the building committee of the town and by his vote created the majority which accepted his bid, if free from fraud and corruption, is not void as against public policy.

If an honest contract to build a schoolhouse, made by a town with a contractor who is also one of its building committee and by his vote created the majority which accepted his bid, is voidable on the ground that the agent contracted with himself, the facts, that the circumstances became fully known to the inhabitants and were discussed and voted upon at two special town meetings without any repudiation of the contract, are sufficient to warrant a finding that the town had ratified the act of the committee.

BILL IN EQUITY by ten taxpayers of the town of Scituate, to restrain the members of a committee appointed by the town to build a new schoolhouse, the treasurer of Scituate, and the inhabitants of that town, from carrying out a contract with Thomas F. Bailey and Son, for building a new schoolhouse in the town, and from paying any money on account of the contract, filed November 5, 1900.

At the trial in the Superior Court, before *Braley*, J., without a jury, it appeared, that at the time the contract was made Thomas F. Bailey, one of the contractors, was a selectman and one of the building committee of the town of Scituate, and by his vote in the committee made a majority of one accepting the bid of Thomas F. Bailey and Son to build the schoolhouse, that firm consisting of himself and his son, and their bid not being the lowest.

The plaintiffs asked for a ruling, that the contract made by the committee with Thomas F. Bailey and Son was void as against public policy. The judge refused so to rule, and made the following findings: That the town had not exceeded the limit of its indebtedness; that it had duly accepted the gift of Emeline S. Jenkins [to give land and money for the schoolhouse]; that the town had ratified the action of the committee appointed to complete the schoolhouse, and appropriated sufficient money to cover the contract made by the committee; that the action of the committee and of Thomas F. Bailey in the making of the contract was not corrupt; and that there was no intention on the part of any of the parties to act otherwise than for the best interests of the town. He made a decree dismissing the bill, and, at the request of the plaintiffs, reported the case for the consideration of this court, such decree to be entered as law and justice might require. The facts appearing by the report are stated in the opinion of the court.

*W. C. Cogswell*, for the petitioners.

*H. H. Pratt*, for Webb and others.

*R. O. Harris*, for the respondent Bailey.

BARKER, J. It appears from the report that the building of a new schoolhouse was determined upon in the town of Scituate, and at a special town meeting held on June 2, 1900, a building committee was raised consisting of the three selectmen, the

three members of the school committee, and three other persons, nine in all. A Mrs. Jenkins of Boston had proposed to make a gift to the town of the lot on which the schoolhouse was to be built, and she afterwards added a gift of the sum of $5,000 toward the cost of the building.

The building committee advertised for proposals which were opened on October 15, 1900. One of the selectmen, and so a member of the building committee, the defendant Thomas F. Bailey, was also a carpenter and builder, pursuing that business under the firm name of Bailey and Son, in partnership with George Bailey his son. There were five bids, the lowest of which was by the plaintiff Sylvester, and the next higher was by Bailey and Son, the price offered by Sylvester being the lower by the sum of $123. By votes of five to four, Thomas F. Bailey being one of the five, the building committee voted not to accept the proposal of the lowest bidder, and to award the contract to Bailey and Son, and authorized their chairman to sign the agreement for the committee. A contract was so signed on the next day by the defendant Webb, chairman, in behalf of the committee and by Thomas F. Bailey for Bailey and Son. The offer of Mrs. Jenkins to give the $5,000 seems to have been made in an interview between her and the chairman Webb, in which he submitted the bids to her. Webb testified that he voted to give the contract to Bailey and Son because he understood Mrs. Jenkins to wish them to have the contract.

The committee awarded the contract on October 29, 1900. At the special town meeting of June 2, the town had passed a vote authorizing its treasurer to borrow a sum not to exceed $14,000, for the erection of the schoolhouse. Bailey and Son's bid was $16,466 and did not include the apparatus for heat and ventilation, the bids for which were separate, and were for over $1,600. The bill in this cause was sworn to on November 5, 1900. A special town meeting was held on December 4, 1900, at which the town voted to accept the deed of Mrs. Jenkins which had been made on November 1 and her agreement of the same date to make the gift of $5,000, and also voted to authorize the building committee to make a contract or contracts not to exceed $20,000 for the erection and completion of the building and for furnishing the same, and grading the grounds, and also

to authorize the treasurer to borrow the sum of $15,000 for the purpose.

Hearings of this bill were going on in court, and another special town meeting was held on December 27, 1900, at which the town again considered matters connected with the contract and the action of the building committee. At this meeting the town voted not to purchase from Bailey and Son the material for which they had contracted in order to carry out their contract with the committee. An article, to see whether the town would compromise and settle Bailey and Son's claim, was passed over. The committee were instructed to award the contract for completing the schoolhouse to the plaintiff Sylvester, provided he should make a satisfactory settlement with Bailey and Son of their claim. An article, to see if the town would authorize the committee to make a contract or contracts not to exceed $21,000 for the erection of the schoolhouse, was passed over. It was voted to award the contract for heating and ventilating to the lowest responsible bidder. An article, to see if the town would instruct the committee to complete the building with workmen employed by the day, or give the committee other instructions, was passed over, and the treasurer was authorized to borrow a sum not exceeding $21,000 inclusive of any sum before authorized for the purpose of erecting and completing the building, and furnishing the same and grading the grounds.

Sylvester was unable to make a settlement with Bailey and Son, and the hearings of the case went on after this last special town meeting, with the result that the judge who heard the case found that the town had not exceeded the limit of indebtedness, that it had duly accepted the gift of Mrs. Jenkins, had ratified the action of the committee and appropriated sufficient money to cover the contract made by the committee, and that the action of the committee and of Thomas F. Bailey in the making of the contract was not corrupt, and that there was no intention on the part of any of the parties to act otherwise than for the best interests of the town. The only question finally raised in the lower court by the plaintiffs was that the contract made by the committee with Bailey and Son, Thomas F. Bailey being one of the contracting firm and one of the committee, was void as being against public policy. The presiding judge re-

fused so to find and rule, and entered a decree dismissing the
bill, and reported the case for the determination of this court.

Such statutes as we have looking directly to the prevention
of corruption in contracts affecting public interests are of com-
paratively recent date.

An Act of 1854 required all contracts made by county com-
missioners for public works to be made in writing after due
notice for proposals had been published in some newspaper.
St. 1854, c. 206. Gen. Sts. c. 17, § 23. Pub. Sts. c. 22, § 22.
St. 1897, c. 137, § 2. St. 1900, c. 119.

In the year 1862 all officers or agents of the State or of any
city, town or public institution were forbidden under a penalty
to receive for themselves or for any other person any commis-
sion, discount, bonus, present or reward on purchases or con-
tracts. St. 1862, c. 101. Pub. Sts. c. 205, § 11; c. 27, § 111.

In the year 1872 all officers connected with any prison, house
of correction, lunatic hospital or other public charitable institu-
tion were forbidden to be concerned or interested directly or
indirectly in any contract, purchase or sale made on account of
any of said institutions. St. 1872, c. 282. Pub. Sts. c. 205,
§ 13.

In the same year a similar provision forbade city officials to
be interested in a private capacity either directly or indirectly
in certain contracts or agreements in which the city is an inter-
ested party. St. 1872, c. 274. Three years later the prohibition
was made more general as to city officials, and was extended to
certain State officers as to contracts and agreements in which
the State is interested. St. 1875, c. 232. Pub. Sts. c. 205, § 12.

In the year 1893 county officers were placed under a similar
prohibition. St. 1893, c. 271, § 1. By the same statute a pen-
alty was imposed upon them for taking any commission, dis-
count, bonus, present or reward. St. 1893, c. 271, § 2.

The omission of the Legislature to include in these prohibi-
tions one forbidding town officials to have a private interest in
contracts in which their towns are interested, is significant.
Massachusetts towns have been usually communities most of
whose members are well known as to their walk and conduct by
their fellows. Town officials have usually been men of probity
and good reputation. The business which they have to do for

their towns is not ordinarily of a kind or an amount which sub-
jects the officer to great temptation, and all his acts are so much
within the knowledge of other men that any fraud or corruption,
while petty in its gains, is likely to be speedily known, and to
bring loss of esteem and quick disgrace. In the very small
towns such a prohibition might cause inconvenience in the
transaction of the public business. It is to the credit of our
people that the Legislature has not found it necessary to forbid
town officers to have a private interest in contracts or purchases
made for the town. It is because they may be counted upon to
make none but fair and honest deals with themselves or others
that the prohibitions imposed upon city, county and State offi-
cials have not been extended further.

This shows that the contract now in question was not made
void as against public policy merely by the fact that one of the
committee was also the contractor to build the schoolhouse. As
to any actual fraud or corruption, that has been negatived by
the finding of the court after full hearing. If upon general
principles of the law of agency the contract was voidable by the
town, it appears that after it was made all the circumstance be-
came fully known to the inhabitants and were discussed and
voted upon in two special town meetings. Certainly the prin-
cipal has not repudiated the contract upon finding that its agent
had a private interest in it. The finding of the court is that the
contract has been ratified. The general purpose of the contract
is one for which the town has an unquestioned right to raise and
expend money. The contract itself is not void because one of
the committee which acted for the town has a private interest
in it, nor has it been found tainted with fraud or corruption.
Therefore the case is not one in which the plaintiffs have a right
to relief under the statute. Such bills can be brought only when
the town votes to raise or to pay money for a purpose other than
those for which it has the legal right and power. Pub. Sts.
c. 27, § 129. St. 1898, c. 490. They cannot be maintained un-
der the general equity jurisdiction of the courts. *Steele* v.
*Municipal Signal Co.* 160 Mass. 36. See also *Baldwin* v. *Wilbra-
ham,* 140 Mass. 459 ; *Prince* v. *Crocker,* 166 Mass. 347, 358.

*Decree dismissing bill affirmed.*