WALTER S. ROBBINS & others *vs.* DEPARTMENT OF PUBLIC
WORKS & another.[1]

Suffolk.    December 3, 1968. — February 5, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Public Land.   Commonwealth,* Real property.

The Metropolitan District Commission was not authorized by G. L. c. 30,
§ 44A, to transfer park land of the Commonwealth in the control of
the commission to the Department of Public Works for highway pur-
poses.

PETITION for a writ of mandamus filed in the Superior
Court on July 31, 1968.

The case was reported by *Bennett,* J.

*Stuart DeBard* for the petitioners.

*Henry S. Healy,* Assistant Attorney General, for the re-
spondents.

KIRK, J.  This amended petition for a writ of mandamus
is before us on reservation and report without decision of
a judge of the Superior Court with a statement of agreed
facts.  In this posture the case is essentially a case stated
and all questions of law and discretion are open to us.  See
*Appleton* v. *Massachusetts Parking Authy.* 340 Mass. 303;
G. L. c. 231, § 111; G. L. c. 213, § 1D, as amended by
St. 1957, c. 155.

The petitioners are members of a group of residents
and voters entitled "Committee for Safety & Conservation,
Interstate 95."  They seek to enjoin the transfer of certain
parcels of land located in a section of the Neponset River
Reservation known as the "Fowl Meadows" from the
Metropolitan District Commission (MDC) to the Depart-
ment of Public Works (DPW).

---

[1] Metropolitan District Commission.

The essential facts are: The Fowl Meadows are in Hyde Park, Milton, Canton and Dedham. They are wetlands of considerable natural beauty with a large capacity for the storage of water during flood seasons and are often used for nature study and recreation. Land in this area has considerable money value.

In April of 1963, the DPW executed an order of taking, accompanied by a layout plan, of land in Norfolk County in connection with the construction of Interstate Highway 95, a ninety per cent federally aided highway (I–95). All lands on the plan "not already owned by the Commonwealth" were taken. Certain parcels of land lying in the Fowl Meadows area were listed as owned by the MDC. These latter parcels (the 1963 parcels) had been acquired in 1899 by the MDC in part by a gift of 210 acres from Augustus Hemenway, in part by the taking by eminent domain of lands of third persons which were paid for by money donated by Hemenway and Charles Van Brunt to assist in the taking for "park purposes," and in part by acquisition from other sources. Since April, 1963, a portion of I–95, including a cloverleaf and interchange with Route 128, has been constructed on the 1963 parcels.

At the time of the hearing in the Superior Court no transfer or payment had been made for the 1963 parcels. An affidavit subsequently filed in this court, however, shows that a transfer of the 1963 parcels has been effectuated pursuant to G. L. c. 30, § 44A, and an offer of payment pro tanto therefor has been accepted. St. 1955, c. 693, § 1 (as amended by St. 1957, c. 657), § 2.

In June and July, 1968, the DPW executed three layouts and orders for taking in the same general area. The three layouts purported to take from a variety of owners "all the land [shown on the plans], not already owned by the Commonwealth." Again the MDC is listed as the owner of certain parcels in the Fowl Meadows area shown on these plans. These latter parcels (the 1968 parcels) do not include any of the 210 acres donated by Hemenway. They do include land taken by eminent domain and largely paid

for with Hemenway's and Van Brunt's gift of $15,000 and land obtained by the MDC from other sources. The 1968 parcels consist of a total of 57.89 acres of MDC land. The DPW plans to use the MDC parcels when transferred and the lands included in the 1968 orders of taking for the construction of an extension of I–95 from Route 128 in Canton to a point in Hyde Park. No transfer of the 1968 parcels has been made from the MDC to the DPW, and no damages or price has been paid or agreed to be paid or established by the Real Estate Review Board under St. 1955, c. 693, § 1 (as amended by St. 1957, c. 657), § 2. A stipulation is on file stating that the DPW will not award a contract for construction on the 1968 MDC parcels without prior notice to the petitioners.

The petitioners quite rightly now do not seek any relief so far as the 1963 parcels are concerned. See discussion, *Commonwealth* v. *Massachusetts Turnpike Authy.* 349 Mass. 1, 4, and St. 1962, c. 717, § 1. We accordingly are concerned only with the 1968 parcels.

The petitioners allege that the MDC is without authority to transfer and the DPW is without authority to accept transfer of the 1968 parcels. They ask that each agency be enjoined from effecting a transfer of the 1968 parcels pending legislative action specifically authorizing the transfer for the proposed purpose.

The rule that public lands devoted to one public use cannot be diverted to another inconsistent public use without plain and explicit legislation authorizing the diversion is now firmly established in our law. *Higginson* v. *Treasurer & Sch. House Commrs. of Boston,* 212 Mass. 583, 591. *Boston Water Power Co.* v. *Boston & Worcester R.R.* 23 Pick. 360, 398. *Commonwealth* v. *Massachusetts Turnpike Authy.* 346 Mass. 250, 253–254. *Sacco* v. *Department of Pub. Works,* 352 Mass. 670, 672. In furtherance of the policy of the Commonwealth to keep parklands inviolate the rule has been stringently applied to legislation which would result in encroachment on them. *Higginson* v. *Treasurer & Sch. House Commrs. of Boston,* 212 Mass. at 591–592.

The respondents contend that the rule has been complied with. They argue that there is already a clear and express legislative authorization for the acquisition of the land from the MDC by the DPW under the provisions of G. L. c. 30, § 44A, and St. 1955, c. 693, and that further legislative approval is not required. Admittedly there are significant differences between G. L. c. 30, § 44A, and the statutes considered by us in *Sacco* v. *Department of Pub. Works*, 352 Mass. 670, 672.[2] For example, G. L. c. 30, § 44A, is not an eminent domain statute; it concerns only "land of the commonwealth"; it requires that the transfer have the approval of the Governor and Council; and it restricts the new use to the "laying out or relocation of any highway."[3] Substantial though these differences are from cognate statutes which we have hitherto considered, the fact remains that G. L. c. 30, § 44A, does not state with the requisite degree of explicitness a legislative intention to effect the diversion of use which the DPW seeks to accomplish. Although the statute specifies a new public use, it is totally silent as to any existing public use. Indeed the statute does not identify the land to be transferred. We think it is essential to the expression of plain and explicit authority to divert parklands, Great Ponds, reservations and kindred areas to a new and inconsistent public use that the Legislature identify the land and that there appear in the legislation not only a statement of the new use but a statement or recital showing in some way legislative awareness of the existing public use.[4] In short, the legislation should express not merely the public will for the new use but its willingness to surrender or forgo the existing use. Since G. L. c. 30, § 44A, does not

[2] So far as material, G. L. c. 30, § 44A, provides: "A commissioner . . . having control of any land of the commonwealth may . . . subject to the approval of the governor and council . . . transfer to the control of another state department . . . such land as may be necessary for the laying out or relocation of any highway."

[3] Under St. 1964, c. 740, §§ 1, 4, the approval of the council is no longer required.

[4] See, for example, St. 1967, c. 428; St. 1968, c. 454; St. 1968, c. 635. See also St. 1967, c. 518, authorizing the DPW to transfer to the MDC certain highways.

identify the land and shows no legislative awareness of the existing use of the 1968 parcels as parkland by the MDC, we cannot say that there was a plain and explicit legislative authority to surrender that use for the manifestly inconsistent use for highway purposes. Accordingly we hold that G. L. c. 30, § 44A, does not authorize the proposed transfer of the 1968 parcels from the MDC to the DPW.

We have considered the collateral legislation which counsel for the DPW contend should bear upon our construction of G. L. c. 30, § 44A.[5] We have weighed carefully their arguments that this should lead to a different result. As applied to cases like the one before us, we think the inadequacy of the statute appears on its face and that to construe it it is unnecessary to deal with other legislation.

Judgment is to be entered for issuance of a writ of mandamus commanding that lands of the Commonwealth designated as owned by "Commonwealth of Massachusetts, Metropolitan District Commission" in layouts 5743, 5744 and 5765 and more particularly described as parcels 3–3; 3–8; 3–TS–1; 3–12; 3–1–T; 3–3–T; 3–TE–1, be not transferred to the Commonwealth's Department of Public Works by the Metropolitan District Commission unless and until legislation authorizing such transfer is duly enacted.

*So ordered.*

---

[5] St. 1955, c. 693, § 1 (as amended by St. 1957, c. 657), § 2. St. 1954, c. 675.