ROBERT S. DOUGLAS & others *vs.* WOODS HOLE,
MARTHA'S VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY.

Dukes County.   September 19, 1974. — December 4, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Woods Hole, Martha's Vineyard and Nantucket Steamship Authority.
Words,* "Vessel," "Equipment."

The competitive bidding requirement in St. 1960, c. 701, § 15, as amended by St. 1964, c. 278, does not apply to purchase of an existing vessel by the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority; such a vessel is not "equipment" within the meaning of that word as used in the statute. [462-463]

---

PETITION for a writ of mandamus filed in the Superior Court on February 23, 1972.

The case was heard by *Kalus,* J., on demurrer.

*Robert J. Muldoon, Jr.,* for the petitioners.

*Scott C. Moriearty* (*Laurence S. Fordham* with him) for the respondent.

BRAUCHER, J.    This petition for a writ of mandamus brings to us the question whether, under the statute creating the respondent Authority, it is required to advertise for competitive bids in purchasing an existing vessel. St. 1960, c. 701, § 15, as amended by St. 1964, c. 278.[1] We hold that such a "vessel" is not "equipment" subject to the competitive bidding requirement. We do not pass on the propriety in other respects of the remedy sought.

The petition alleges the following facts. The petitioners are residents and citizens of Dukes County. The Authority is a public instrumentality and body corporate created by St. 1960, c. 701. About February 16, 1973, it purchased and paid $435,000 for a freighter capable of transporting motor vehicles. The vessel was located in Louisiana, and the Authority proposed to expend further funds to transport the vessel to Massachusetts. The Authority did not comply with the competitive bidding requirements of the statute creating it, governing its purchases of equipment. Dukes County is obligated to meet fifty per cent of any annual deficit incurred by the Authority. § 9. The obligation is levied on county taxpayers through levies on the towns in the county, and the petitioners, along with other county residents, would share in any resulting burden. The peti-

---

[1] Section 15 reads: "No contract shall be awarded by the Authority for construction work or for the purchase of equipment, supplies or materials, whether for repairs or original construction, the estimated cost of which amounts to one thousand dollars or more, except in cases of special emergency involving the health, convenience or safety of the people using the facilities of the Authority, unless proposals for the same have been invited by advertisements in at least one newspaper published in each of the towns of Falmouth and Nantucket and the county of Dukes County once a week for at least two consecutive weeks, the last publication to be at least one week before the time specified for the opening of said proposals. Such advertisements shall state the time and place where the plans and specifications of proposed work or supplies may be had and the time and place for opening the proposals in answer to said advertisements."

366 Mass. 459                                 461

Douglas *v*. Woods Hole, Martha's Vineyard & Nantucket Steamship Authy.

tioners prayed for interlocutory relief and for a writ of mandamus ordering and enjoining the Authority to refrain from expending funds incidental to the purchase and to rescind the transaction.

In the Superior Court interlocutory relief was denied, a demurrer was sustained, and an order for judgment was entered. The petitioners appealed from the interlocutory order sustaining the demurrer and from the order for judgment. A motion for injunction pending appeal was denied.

1. The petitioners' allegations are insufficient to allege an interest apart from that of the public generally and hence to show standing to maintain a bill in equity for injunctive and declaratory relief. *Nantucket Boat, Inc.* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 345 Mass. 551, 553-554 (1963). *Fine* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 350 Mass. 775 (1966). They contend, however, that the rule is different when a writ of mandamus is sought to enforce a public duty, citing *Brewster* v. *Sherman,* 195 Mass. 222, 224-225 (1907), *Kaplan* v. *Bowker,* 333 Mass. 455, 460 (1956), and *Gould* v. *Greylock Reservation Commn.* 350 Mass. 410, 411 (1966). In the *Gould* case, which in some respects resembles the present one, the issue of standing was not considered. The Authority denies that the rule depends on the form of the action, citing *Reading* v. *Attorney Gen.* 362 Mass. 266, 271 (1972). Cf. Mass. R.Civ.P. 2, 81 (b), 365 Mass. 733, 841. It points out that § 12 of the statute authorizes mandamus only by or on behalf of bondholders. It also contends that the seller of the vessel is an indispensable party. *Lawrence* v. *Smith,* 201 Mass. 214, 215 (1909). *Dresser* v. *Inspector of Bldgs. of Southbridge,* 348 Mass. 729, 731 (1965). Further, it says, the case, as a mandamus case, is moot. Compare *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243, 247 (1952), and *Spear* v. *Boston,* 345 Mass. 744, 746 (1963), with *Nickols* v. *Commissioners of Middlesex County,* 341 Mass. 13, 27 (1960), and *Gould* v. *Greylock*

*Reservation Commn.* 350 Mass. 410, 427 (1966). In view of our determination that the competitive bidding statute is not applicable, we do not resolve these questions.

2. The competitive bidding statute (see fn. 1) applies to contracts "for construction work or for the purchase of equipment, supplies or materials, whether for repairs or original construction," unless the estimated cost is less than $1,000 or there is a special emergency. Its language is similar to that of G. L. c. 40, § 4B, applicable to most cities and towns but omitting the phrase, "whether for repairs or original construction," and G. L. c. 43, § 28, applicable to certain cities. We pass without deciding the question, disputed by the parties, whether the phrase omitted in the c. 40 provision serves to limit or merely to clarify the other statutes.

In our opinion the statute creating the Authority uses the word "vessel" in such a way as to show that vessels are not included in "equipment." "Vessels" and "equipment" are referred to as distinct items at four places in the statute.[2] In two other places reference is made to "vessels and other facilities." §§ 4 (b), 5. Distinction between vessels and equipment is common in other statutes where special consideration is given to vessels. See, e.g., G. L. c. 90B, § 1 (damage to "vessel or its equipment"); § 7 ("vessel" required to be provided with "equipment"); c. 235, § 34 ("tools, implements and fixtures" exempted separately from "boats, fishing tackle and nets"); c. 255, § 14 (lien on "the vessel, her tackle, apparel and furniture"); Federal Boat Safety Act of 1971, 46 U. S. C. § 1452 (2) (8) (Supp. II, 1972) (separate definitions of "vessel" and "associated

---

[2] Section 1 empowers the Authority to purchase "necessary vessels, docks, wharves, other vessels, equipment, furniture and supplies."

Section 5 authorizes issuance of refunding bonds for the purpose of purchasing "additional vessels or equipment."

Section 8 forbids conveyance or mortgage, to secure bonds, of "vessels, equipment or property."

Section 9A, inserted by St. 1964, c. 563, § 17, provides for debt service on bonds issued in respect to "any vessels, equipment or facility" for mass transportation purposes.

366 Mass. 459                                           463

Douglas *v.* Woods Hole, Martha's Vineyard & Nantucket Steamship Authy.

equipment"); *Commonwealth* v. *Breakwater Co.* 214 Mass. 10, 15 (1913) ("equipment" of vessel). It is not contended that the vessel was "construction work" or "supplies or materials." It follows that its purchase was not subject to the statute. Cf. *Deary* v. *Dudley,* 343 Mass. 192, 194 (1961) ("building" did not include a sewer).

Our reading makes the enactment, considered as a whole, a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature. *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 352 Mass. 617, 618 (1967). The purpose of competitive bidding is "to secure honest and open competition." *Sweezey* v. *Mayor of Malden,* 273 Mass. 536, 540 (1931). *Pacella* v. *Metropolitan Dist. Commn.* 339 Mass. 338, 342 (1959). Competitive bidding does not work well, as the petitioners concede, when there is a legitimate need for a product which is the subject of a monopoly, such as a patented article or a particular brand. See Rhyne, Municipal Law, § 10-6, p. 263 (1957). For similar reasons competitive bidding is not required by the present statute for the purchase of real property or existing docks or wharves. We think existing vessels are in a like category. *Boone* v. *Cook,* 365 S. W. 2d 100, 102 (Ct. App. Ky. 1963).

The details of the statute confirm our reading: they require "plans and specifications of proposed work or supplies," award to the "lowest responsible and eligible bidder," and two publications in successive weeks "in at least one newspaper published in each of the towns of Falmouth and Nantucket and the county of Dukes County," and allow a minimum of one week after the last publication before the bid opening. Plans and specifications for an existing vessel are unlikely to produce useful competition. The low bidder on such specifications may well not supply the most suitable vessel. The statute (§ 5) requires a license or permit from the Authority for operation of a vessel of more than 100 gross tons for the carriage of passengers, vehicles or freight for hire in the local area. Hence suitable vessels seem more likely to be found

elsewhere than in the local area, and advertisement in the local area seems an inappropriate method of reaching prospective bidders.

> *Order sustaining demurrer affirmed.*
> *Order for judgment affirmed with*
> *costs of appeal.*