COMMONWEALTH *vs.* FREMONT INVESTMENT & LOAN
& another[1] (and a companion case[2]).

Suffolk. December 6, 2010. - April 1, 2011.

Present: IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Practice, Civil,* Judgment on the pleadings, Intervention. *Public Records.*
*Constitutional Law,* Separation of powers. *Protective Order. Statute,*
Construction.

In a civil action brought in the Superior Court by an individual seeking
declaratory and injunctive relief compelling the Commonwealth to comply
with his request for access under the public records law, G. L. c. 66, § 10,
to documents that were produced during discovery in a separate enforce-
ment action brought by the Attorney General and which were subject to a
protective order, the judge properly allowed the Commonwealth's motion
for judgment on the pleadings, dismissing the individual's complaint,
where the public records law did not invalidate the otherwise providently
entered protective order, given that such a construction of that statute
would raise serious constitutional questions about the law's validity.
[212-216]

In an enforcement action brought in the Superior Court by the Attorney
General, the judge did not err in denying an individual's motion to intervene
as of right, where the public records law, G. L. c. 66, § 10, did not confer
on the public a right to intervene in such cases, and where the individual's
interest in the case was in the documents produced at trial, not in the
property or transaction that was the subject of the action [216-217]; however,
the denial by the judge of the individual's motion for permissive interven-
tion required remand for further consideration, given that, although the
public records law did not address a right to intervene, a third party might
be able to bring a separate action challenging a protective order, and it
would therefore promote judicial economy in such cases for the judge who
managed the relevant discovery and issued the protective order to hear, in
his or her discretion, a challenge to that order [217-219].

CIVIL ACTION commenced in the Superior Court Department on
October 4, 2007.

A motion to intervene was heard by *Margaret R. Hinkle,* J.

CIVIL ACTION commenced in the Superior Court Department on
June 22, 2009.

[1]Fremont General Corporation.

[2]Samuel J. Lieberman *vs.* Attorney General.

The case was heard by *Thomas A. Connors*, J., on a motion for judgment on the pleadings.

After consolidation, the Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David Pastor* for Samuel J. Lieberman.

*Christopher K. Barry-Smith*, Assistant Attorney General (*Matthew H. Schrumpf*, Assistant Attorney General, with him) for the Commonwealth.

*James R. Carroll* (*Peter Simshauser* with him) for Fremont Investment & Loan & another.

*Daniel P. Chiplock*, of New York, for National Association of Shareholder and Consumer Attorneys, amicus curiae, submitted a brief.

Cowin, J. This case concerns Samuel J. Lieberman's claim to a right of access, pursuant to the public records law, G. L. c. 66, § 10 (defining rights, remedies and procedures); see G. L. c. 4, § 7, Twenty-sixth (defining "[p]ublic records" and exemptions), to documents received in litigation by the Attorney General. The relevant documents were produced by Fremont Investment & Loan[3] and Fremont General Corporation (hereinafter, collectively, Fremont) in an enforcement action by the Attorney General against Fremont (enforcement action), and were subject to a protective order entered in that case. See generally *Commonwealth* v. *Fremont Inv. & Loan*, 452 Mass. 733 (2008).

This case consolidates two appeals by Lieberman. One arises from Lieberman's motion to intervene in the enforcement action to pursue his claim of access to the documents under the public records law. A Superior Court judge (enforcement action judge) denied Lieberman's motion for intervention.[4] We vacate that order and remand for further consideration consistent with this opinion.

---

[3] The company is now known as Fremont Reorganizing Corporation.

[4] "An order 'denying intervention [is] immediately appealable by the [applicants] claiming intervention as of right.' At least where there is also an appeal from a denial of a claim of intervention as of right, we will also consider the denial of a request for permissive intervention." *Massachusetts Fed'n of Teachers, AFT, AFL-CIO* v. *School Comm. of Chelsea*, 409 Mass. 203, 204-205 (1991), quoting *Attorney Gen.* v. *Brockton Agricultural Soc'y*, 390 Mass. 431, 433 (1983).

Lieberman also filed a separate action in the Superior Court challenging the protective order (public records action). There, a second judge (public records action judge) allowed the Commonwealth's motion for judgment on the pleadings and dismissed Lieberman's complaint. We affirm the judgment.

1. *Background.* In October, 2007, the Attorney General brought an enforcement action against Fremont in the Superior Court, alleging unfair and deceptive practices in Fremont's mortgage lending business. During pretrial discovery, the Commonwealth and Fremont filed a joint motion for a protective order to govern the exchange of documents and information the parties claimed were confidential. The enforcement action judge entered such a protective order, and that order remains in effect.

The order defines "Confidential Materials" as those "entitled to confidential treatment pursuant to Rule 26(c) of the Massachusetts Rules of Civil Procedure" and designated as confidential by the producing party. Such materials are ordered to be used "only for the purposes of preparing for and conducting the [l]itigation" and are not to be disclosed to persons other than "Qualified Persons."[5] The Attorney General estimates that Fremont designated 5.5 million pages as confidential pursuant to the order, and the Attorney General did not challenge any of Fremont's designations. The Attorney General and Fremont ultimately settled the case and a consent order was entered in June, 2009.

In May, 2009, Lieberman wrote to the Attorney General, pursuant to the public records law, asserting a statutory right of access to certain categories of documents received by the Attorney General during the enforcement action. The Attorney General responded with a letter indicating that she would not produce copies of any of the documents designated confidential by Fremont.[6]

Lieberman thereafter filed the public records action seeking

---

[5]This includes the court and its personnel, counsel to the parties, court reporters, and other similar persons; it does not include Lieberman.

[6]In his initial request, Lieberman sought deposition transcripts and associated exhibits, court proceeding transcripts, pleadings, witness affidavits and declarations, memoranda of witness interviews conducted by the Attorney General, responses to interrogatory requests and requests for admission, all nonprivileged documents produced in the matter, and "consumer information

declarative and injunctive relief compelling the Commonwealth to comply with his request under the public records law. Lieberman filed the action in the business litigation session of the Superior Court Department, where the protective order had been issued, but the case was denied acceptance into that session and was assigned to a judge in a different session. The Commonwealth subsequently filed a motion for judgment on the pleadings, and after a hearing the public records action judge granted the Commonwealth's motion and dismissed Lieberman's complaint.

During the pendency of the public records action, Lieberman filed a motion to intervene in the enforcement action, or in the alternative to transfer the public records action to the business litigation session. Fremont assented to Lieberman's intervention, and the Commonwealth did not object. The enforcement action judge nonetheless denied the motion, stating, "This court has already declined to take the public records action (09-2592A) into the [business litigation session] and intervention is unwarranted."

Lieberman appealed to the Appeals Court both the order denying intervention in the enforcement action and the judgment dismissing the public records action, and the Appeals Court granted a motion to consolidate the appeals. We transferred the case here on our own motion.[7]

2. *Discussion.* a. *The public records action.* We turn first to the decision of the judge in the public records action. "We review de novo [a] judge's order allowing a motion for judgment on the pleadings under [Mass. R. Civ. P. 12(c), 365 Mass. 754 (1974)]." *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 600 (2010).

The statutory basis for Lieberman's claim in the public records action is the public records law. That law governs the maintenance of public records and provides the public a right to

and affidavits" compiled by the Attorney General. In the memorandum in support of his motion for preliminary injunction, Lieberman indicated that the "main" records he sought were the deposition transcripts and exhibits of former Fremont officers, employees, and agents.

[7]We acknowledge the amicus brief of the National Association of Shareholder and Consumer Attorneys.

inspect such records. See G. L. c. 66, § 10. The definition of "[p]ublic records" encompasses records "made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth, or of any political subdivision thereof, or of any authority established by the general court to serve a public purpose." See G. L. c. 4, § 7, Twenty-sixth. The Attorney General does not dispute that she is among the public authorities subject to the law. Although certain categories of records are exempted from the definition of public records, none of those exemptions make explicit reference to protective orders, and the issue is not addressed elsewhere in the public records law.

The question before us is whether the public records law constitutes a legislative determination that the public interest in access to government records overrides the traditional authority of courts to enter protective orders, and thus obligates the Attorney General to provide the documents to Lieberman. As an interpretation of the public records law that would compel such a conclusion would raise serious constitutional doubts as to the validity of the statute, we conclude that it does not.

The courts of the Commonwealth have certain inherent powers that are "essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases." *Querubin* v. *Commonwealth*, 440 Mass. 108, 114 (2003), quoting *Gray* v. *Commissioner of Revenue*, 422 Mass. 666, 672 (1996). Such inherent powers are protected by art. 30 of the Massachusetts Declaration of Rights.[8] "Although inherent powers may be recognized by statute, they exist independently, because they 'directly affect[] the capacity of the judicial department to function' and cannot be nullified by the Legislature without violating art. 30 [of the Massachusetts Declaration of Rights]." *Querubin* v. *Commonwealth*, *supra*, quoting *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 397 (2003).

Among those inherent powers is the court's authority to issue

---

[8]Article 30 of the Massachusetts Declaration of Rights provides, in relevant part: "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them. . . ."

protective orders. See *Seattle Times Co.* v. *Rhinehart,* 467 U.S. 20, 35 (1984), quoting *International Prods. Corp.* v. *Koons,* 325 F.2d 403, 407-408 (2d Cir. 1963) (Friendly, J.) ("we have no question as to the court's jurisdiction to [issue a protective order] under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices' "). Protective orders serve to shield litigants and third parties from unwarranted disclosures, and, as a practical matter, to facilitate the discovery necessary for a trial. We have held, analogously, that a court has inherent authority to impound documents filed with it. See *George W. Prescott Publ. Co.* v. *Register of Probate for Norfolk County,* 395 Mass. 274, 277 (1985).

Where fairly possible, a statute must be construed "so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.,* 452 Mass. 764, 771 (2008), quoting *Commonwealth* v. *Joyce,* 382 Mass. 222, 226 n.5 (1981). As construing the public records law to invalidate an otherwise providently entered protective order would raise serious constitutional questions about the validity of that law, we conclude that the public records action judge did not err in dismissing Lieberman's claim.

Lieberman contends that if a particular class of documents is subject to the disclosure requirements of the public records law, then the courts may not bind a public entity to a protective order that prevents the disclosure of such documents. He characterizes the protective order as having been entered for the purpose of protecting "confidential business information," and notes that an exemption of the public records law squarely addresses such documents.[9] That exemption provides an exception to disclosure for "trade secrets or commercial or financial

---

[9]To the extent that documents subject to the protective order fall within another exemption in the public records law, Lieberman agrees that such information is properly protected, and could be redacted prior to disclosure. For example, he notes that sensitive borrower-specific information would likely fall within the exemption to the public records law for "materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy," G. L. c. 4, § 7, Twenty-sixth (*c*), and could be properly redacted.

information voluntarily provided to an agency for use in developing governmental policy and upon a promise of confidentiality." G. L. c. 4, § 7, Twenty-sixth (*g*). The exemption provides further that "this subclause shall not apply to information submitted as required by law or as a condition of receiving a governmental contract or other benefit." *Id.* As this exemption carves out a subclass of confidential business documents that includes only those provided voluntarily, and as the documents here were submitted "as required by law," Lieberman contends that the Legislature affirmatively expressed an intent to exclude the documents at issue in this case from the exemption. He asserts in turn that a judicial protective order preventing the Attorney General from disclosing such documents is ineffective.[10]

Although Lieberman's characterization of the scope of this exemption is sound, and thus the exemption does not insulate these particular records, his conclusion that the records must therefore be disclosed is based on the mistaken premise that all documents in the hands of public officials must, absent an applicable exception, be made public notwithstanding a court order prohibiting their circulation. We do not agree that the public records law was intended to extend this far. The statute is silent on the issue of protective orders, and, for the constitutional reasons discussed previously, we will not assume that the Legislature intended to impose such limitations on the judiciary. Nor do we believe, as a matter of statutory construction, that the Legislature would endeavor to effect such a significant change to a long-standing and fundamental power of the judiciary by implication. Cf. *Kerins* v. *Lima*, 425 Mass. 108, 110 (1997), quoting *Commercial Wharf E. Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass. 123, 129 (1990), *S.C.*, 412 Mass. 309 (1992) (requiring clear expression to effect "radical change in the common law").

Our conclusion in that respect is consistent with our holding in *Suffolk Constr. Co.* v. *Division of Capital Asset Mgt.*, 449

---

[10]Lieberman also claims that the terms of the protective order itself dictate that it should not prevent disclosure of records requested pursuant to the public records law. The language cited by Lieberman pertains to requests by borrowers for information in borrowers' mortgage loan files, and to requirements that the Commonwealth provide documents to other governmental agencies. Those terms are inapposite.

Mass. 444 (2007). There, we held that the public records law did not abrogate the attorney-client privilege because the public records law is "silen[t] on a matter of common law of fundamental and longstanding importance to the administration of justice." *Id.* at 458. That principle applies with equal force here, where the statute is silent on a matter of inherent judicial power.[11]

In affirming the decision of the public records action judge, we recognize that the judge did not rule on all questions at issue in this case. The holding of the public records action judge was limited to the conclusion that the public records law does not, as a matter of law, render the protective order ineffective. The judge did not address the question whether the order should be modified for other reasons, or whether certain documents designated confidential by Fremont are not validly protected by the order.

b. *The enforcement action.* We consider next the enforcement action judge's decision to deny Lieberman's motion to intervene. Lieberman sought both intervention as of right and permissive intervention, each pursuant to Mass. R. Civ. P. 24, 365 Mass. 769 (1974).[12]

---

[11]Our holding in *General Elec. Co.* v. *Department of Envtl. Protection,* 429 Mass. 798, 801 (1999), that materials falling within the work product privilege are not protected from disclosure under the public records law unless they fall within an express exemption, does not alter our conclusion in the present case. There, we were presented with more direct evidence that the Legislature had contemplated the work product privilege and decided to exclude it from the exemption, and the case did not raise the constitutional issues presented here. See *id.* at 803-804.

[12]Rule 24 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 769 (1974), provides, in relevant part:

"Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the Commonwealth confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Rule 24 (b) provides, in relevant part:

"Permissive Intervention. Upon timely application anyone may

We begin with Lieberman's motion for intervention as of right. A judge has discretion in determining whether an intervening party has demonstrated facts that entitle him or her to intervention as of right, and we accordingly review the judge's factual findings for clear error. See *Board of Registration in Medicine v. Doe*, 457 Mass. 738, 742 (2010) (factual findings generally reviewed for clear error on appeal). Whether those facts are sufficient to meet the requirements for intervention is a question of law, however, and is reviewed as such. Cf. C.A. Wright, A.R. Miller, M.K. Kane, 7C Federal Practice and Procedure § 1902, at 261 (3d ed. 2007) (intervention of right question of law under analogous Federal rules).

Intervention as of right is appropriate under Mass. R. Civ. P. 24 (a) if (1) "a statute of the Commonwealth confers an unconditional right to intervene," or "(2) when the applicant claims an interest relating to the property or transaction [that] is the subject of the action . . . ." The public records law does not confer on the public a right to intervene in cases such as the Fremont action. See G. L. c. 66, § 10; G. L. c. 4, § 7, Twenty-sixth. Lieberman does not claim otherwise. Moreover, Lieberman's interest in this case is in the documents produced at trial, not in the "property or transaction" that was the subject of the action. He does not seek to intervene for any reason related to the outcome of the Attorney General's suit or its settlement, or for a reason related to Fremont's loan origination and sales practices in Massachusetts. Accordingly, the judge did not err in denying intervention as of right.

The trial court also denied Lieberman permissive intervention, a decision that we review for clear abuse of discretion. See *Massachusetts Fed'n of Teachers, AFT, AFL-CIO v. School Comm. of Chelsea*, 409 Mass. 203, 209 (1991). Permissive intervention is appropriate under Mass. R. Civ. P. 24 (b) where (1) "a statute of the Commonwealth confers a conditional right to intervene," or "(2) when an applicant's claim or defense and

be permitted to intervene in an action: (1) when a statute of the Commonwealth confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

the main action have a question of law or fact in common
. . . ."[13] As noted, the statute does not address a right to inter-
vene and Lieberman makes no claim that intervention should
have been permitted on that basis.

A more difficult question is whether a third party who seeks
to intervene for the purpose of challenging a protective order
can be said to fit within the parameters of the second part of
rule 24 (b). When faced with this issue, or with the broader
question whether any form of intervention is warranted, the
majority of Federal Circuit Courts of Appeal have held that
intervention is procedurally appropriate under analogous Federal
rules of civil procedure. See *Pansy* v. *Borough of Stroudsburg,*
23 F.3d 772, 778 (3d Cir. 1994), and cases cited (agreeing with
"forming consensus in the federal courts" that permissive
intervention is appropriate procedure for challenging protective
orders). See also *Public Citizen* v. *Liggett Group, Inc.,* 858 F.2d
775, 783 (1st Cir. 1988), quoting *In re Beef Indus. Antitrust
Litig.,* 589 F.2d 786, 789 (5th Cir. 1979) (intervention is "*the*
procedurally correct course" for third-party challenges to protec-
tive orders).

To that end, the commonality requirement has been generously
construed. In *Beckman Indus., Inc.* v. *International Ins. Co.,* 966
F.2d 470, 474 (9th Cir. 1992), the United States Court of Appeals
for the Ninth Circuit concluded that "[t]here is no reason to
require such a strong nexus of fact or law when a party seeks to
intervene only for the purpose of modifying a protective order."
The same is true of the present case. Given that a third party may
be able to bring a separate action to challenge a protective order,
it will promote judicial economy in such cases for the judge who
managed the relevant discovery and issued the protective order to
hear the challenge to that order.

Our conclusion does not require that a motion for permissive
intervention be granted in every case in which a party moves to
intervene to challenge a protective order. Indeed, Mass. R. Civ.

---

[13]Rule 24 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 769
(1974), also requires that the person seeking to intervene serve a motion to
intervene upon the parties, and that such motion be "accompanied by a plead-
ing setting forth the claim or defense for which intervention is sought." We
conclude that the complaint in the public records action that Lieberman an-
nexed to his motion for intervention satisfies this requirement.

P. 24 (b) states that the judge "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." We have noted previously that a judge might consider such factors as a party's delay in seeking intervention (and the circumstances of such a delay), the number of intervention requests or likely intervention requests, the adequacy of representation of the intervening party's interests, and other similar factors. See *Attorney Gen.* v. *Brockton Agricultural Soc'y*, 390 Mass. 431, 435 (1983). We reiterate that the trial judge has considerable discretion in deciding whether permissive intervention is appropriate. See *id.*

Should the enforcement action judge decide to grant permissive intervention, Lieberman would be afforded an opportunity to challenge whether the materials he seeks are validly covered by the protective order.[14] That inquiry will be the same as it would be at the time the protective order was granted, although assessed at the time of intervention. The judge may thus take into account changed circumstances that may render certain materials no longer validly covered by the order. That may include, for example, consideration of Lieberman's claim that there are no longer trade secrets to protect.

The inquiry additionally may include consideration of the reasonable reliance of a party on a protective order in its production of information. The issue may be particularly salient where a party has disclosed new information in discovery that would not otherwise have been disclosed, and that was reasonably expected at the time of disclosure to remain confidential within the terms of the order. Cf., e.g., *Pansy* v. *Borough of Stroudsburg*, *supra* at 790, quoting *Beckman Indus., Inc.* v. *International Ins. Co.*, *supra* at 475-476 ("reliance would be greater . . . where witnesses had testified pursuant to a protective order without invoking their Fifth Amendment privilege").

3. *Conclusion.* We conclude that the public records action judge held properly that the public records law does not abrogate

---

[14]Although Lieberman mentions the prospect of modification of the protective order in general terms, he has not addressed his arguments to any modification in particular. Nor are we presented in this case with an order denying modification. We leave to the enforcement action judge the question whether modification is appropriate in the event that the judge allows Lieberman's motion for intervention, and in the event Lieberman requests modification.

judicial protective orders, and the judgment of dismissal in that case is accordingly affirmed. The order of the enforcement action judge denying Lieberman's motion for intervention is vacated for further consideration consistent with this opinion.

*So ordered.*