NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-314                                              Appeals Court
22-P-433


ELIZABETH REILLY & others[1]  vs.  TOWN OF HOPEDALE & others[2]
(and a companion case[3]).


Nos. 22-P-314 & 22-P-433.

Worcester.      November 15, 2022. - March 7, 2023.

Present:  Wolohojian, Ditkoff, & Walsh, JJ.


Practice, Civil, Standing, Declaratory proceeding, Judgment on
     the pleadings, Intervention, Moot case, Taxable
     inhabitants' action.  Jurisdiction, Taxable inhabitants'
     action.



     Civil action commenced in the Superior Court Department on
March 3, 2021.

     The case was heard by Karen L. Goodwin, J., on motions for
judgment on the pleadings, and a motion for clarification was
considered by her.


_____

     [1] Carol J. Hall, Donald Hall, Hilary Smith, David Smith,
Megan Fleming, Stephanie A. McCallum, Jason A. Beard, Amy Beard,
Shannon W. Fleming, and Janice Doyle.

     [2] Bernie Stock, Brian R. Keyes, Grafton & Upton Railroad
Company, Jon Delli Priscoli, Michael Milanoski, and One Hundred
Forty Realty Trust.

     [3] Town of Hopedale vs. Jon Delli Priscoli, trustee, &
others.

David E. Lurie (Harley C. Racer also present) for Elizabeth Reilly & others.

Sean M. Grammel for town of Hopedale & others.

Donald C. Keavany, Jr., for Jon Delli Priscoli & others.

Robert A. Indresano, for Friends of the Centerville Cranberry Bog Preservation, Inc., amicus curiae, submitted a brief.

Civil action commenced in the Land Court Department on October 28, 2020.

Following a joint stipulation of dismissal, a motion to vacate the stipulation was heard by Diane R. Rubin, J., and motions to intervene and for an expedited hearing were considered by her.

Harley C. Racer for Elizabeth Reilly & others.

Donald C. Keavany, Jr., for Jon Delli Priscoli & others.

WOLOHOJIAN, J. These two cases stem from a dispute concerning chapter 61 forest land located in the town of Hopedale (town) that the Grafton & Upton Railroad (railroad) wishes, and already has begun, to develop over opposition by the town and certain of its residents. The first case (No. 22-P-314) was filed in the Superior Court by a group of town residents (citizens) challenging a settlement agreement reached between the town, and the railroad, the owner of the land (the One Hundred Forty Realty Trust [trust]), and the trustees of the trust (Jon Delli Priscoli and Michael Milanoski). The essential question raised in the appeal from the Superior Court case is whether the citizens have standing to pursue the declaratory

relief they sought in count II of their complaint. As pertinent to this appeal, that count sought a declaration that the town's agreement, as part of the settlement, to waive its statutory option to purchase the forest land pursuant to G. L. c. 61, § 8, was invalid and unenforceable. We affirm the dismissal of Count II because, like the Superior Court judge, we conclude that the citizens do not have standing under either G. L. c. 40, § 53 (pertaining to citizen suits), or G. L. c. 231A (pertaining to declaratory actions) for the particular relief sought in count II.[4]

The second case (No. 22-P-433) comes to us on appeal from the Land Court, where the citizens' motion to intervene in a suit brought by the town against the railroad and the trust was denied as moot. We conclude that the Land Court judge should not have denied the motion to intervene as moot, and accordingly we vacate that order and remand the matter to the Land Court to permit the Land Court judge to consider the motion to intervene on the merits, as well as the citizens' motion to join in the town's motion to vacate the stipulation of dismissal.

Background. We begin by setting out the pertinent aspects of G. L. c. 61, which governs the classification and taxation of forest land and forest products, and the purpose of which is to

---

[4] We acknowledge the amicus brief submitted by Centerville Cranberry Bog Preservation, Inc.

promote the preservation and maintenance of forest land, i.e., "land devoted to the growth of forest products." G. L. c. 61, § 1. The statute achieves this purpose by giving owners of land classified as forest land a significantly reduced tax rate for as long as the land remains certified as forest land by the State forester and is maintained according to an approved forest management plan. See G. L. c. 61, §§ 2, 2A, 5. Land certified under c. 61 is subject to a lien by the municipality in which the land is located. See G. L. c. 61, § 2.

If an owner of forest land certified under c. 61 wishes to sell the land or convert it to another use, certain consequences follow. To begin with, the land may be subject to roll-back taxes or a conveyance tax. See G. L. c. 61, §§ 6, 7. In addition, the owner must notify the municipality in which the land is located so that the municipality may decide whether to exercise its statutory "first refusal option" (option). G. L. c. 61, § 8, twelfth par. The municipality may exercise the option itself or may assign the option to a "nonprofit conservation organization or to the Commonwealth or any of its political subdivisions." G. L. c. 61, § 8, seventeenth par.

In this case, the trust owned 155.24 acres of land in the town located at 364 West Street, 130.18 acres of which were classified as forest land subject to G. L. c. 61. On June 27, 2020, the railroad entered into a purchase and sale agreement

with the trust to buy the land.[5]  Not long thereafter, on July 9,
2020, the railroad's president notified the town of the planned
land purchase,[6] and stated that the railroad intended to use the
land "to provide additional yard and track space in order to
support the current and anticipated increase in rail traffic of
[the railroad's] transloading operations."[7]  In other words, the
notice clearly conveyed the railroad's intent to convert the
forest land to a use outside the scope of c. 61.

Although the notice clearly conveyed an intent to convert
the forest land to another use, thus implicating the town's
option, the town believed that the notice did not adequately
convey the terms of the offer to which the option applied.  See
G. L. c. 61, § 8, eleventh par.[8]  The town therefore requested

---

[5] Jon Delli Priscoli, the railroad's principal owner, signed
the purchase and sale agreement in his capacity as trustee of
the New Hopping Brook Realty Trust, which was the anticipated
purchaser.

[6] The railroad's president, Michael Milanoski, served the
notice on behalf of Charles Morneau, the trustee of the trust.

[7] See G. L. c. 61, § 8, seventh par., which provides:

"Any notice of intent to convert to other use shall be
accompanied by a statement of intent to convert, a
statement of proposed use of the land, the location and
acreage of land as shown on a map drawn at the scale of the
assessors map in the city or town in which the land is
situated, the name, address and telephone number of the
landowner and the landowner's attorney, if any."

[8] General Laws c. 61, § 8, eleventh par., provides:

that a revised notice complying with the requirements of the statute be submitted.  The town identified two defects in particular:  first, that the transaction included land not classified under c. 61 and second, that the purchase price was for more than the c. 61 land.  At the same time, the town reserved its rights with respect to the option.[9]

Instead of sending a corrected notice, and apparently wishing to prevent the town from exercising the option to which it was entitled, the railroad restructured the transaction.  In this iteration of the transaction, rather than taking ownership of the forest land by purchasing it directly from the trust for $1.175 million, the railroad instead purchased the beneficial interest in the trust for the exact same amount.[10]  Also as part of the restructured transaction, the railroad's president and

---

"If the notice of intent to sell or convert does not contain all of the material as described above, then the town or city, within 30 days after receipt, shall notify the landowner in writing that the notice is insufficient and does not comply."

[9] On October 7, 2020, the trust claimed to withdraw the notice of intent.  The town responded on October 8, stating its view that the option ripened with receipt of the July 9 notice of intent, so the purported withdrawal lacked legal effect.

[10] The 130.18 acres of forest land subject to c. 61 was owned by the trust; the non-c. 61 land was purchased by the railroad for one dollar, and thus no longer remained in the trust.  The railroad also purchased about twenty acres of nonforest land situated nearby at 363 West Street.

the railroad's principal owner were installed as cotrustees of the trust.[11]  The practical result of the restructured transaction was to give the railroad control of the trust and of the c. 61 forest land the trust owned, while not constituting a sale of the forest land.  It should be noted that, irrespective of any sale, G. L. c. 61, § 8, thirteenth par., prohibits the conversion of forest land to residential, industrial, or commercial use without first offering the municipality the right to purchase it.

On October 21, 2020, the town informed the trust and the railroad that, because the trust was a nominee trust, the transfer of a controlling beneficial interest constituted the transfer of an interest in real estate, again triggering the town's option of first refusal under G. L. c. 61, § 8.  At a special town meeting on October 24, 2020, it was unanimously voted to appropriate $1.175 million to acquire (either by purchase or eminent domain) the 130.18 acres of forest land, and to appropriate $25,000 to acquire the 25.06 acres of nonforest land.[12]

---

[11] Charles E. Morneau, the former trustee, resigned as part of the transaction.

[12] The board of selectmen voted to exercise the town's option, and the town recorded the exercise of its option regarding the forest land and an order of taking as to the nonforest portion of the property in the Worcester County registry of deeds on November 2, 2020.

Meanwhile, the railroad began site work on the forest land, including large-scale tree cutting. The town accordingly filed a complaint in the Land Court seeking injunctive relief, a declaratory judgment, approval of the town's memorandum of lis pendens, an order for specific performance directing that forest land be conveyed to the town, and an order permitting the town to enter the forest land to conduct inspections.[13]  The railroad and the trust responded to the Land Court complaint in various ways, including by filing a petition with the Surface Transportation Board (STB), seeking a declaration that Federal railroad law preempted the town from exercising its c. 61 rights.

After a hearing, the Land Court judge denied the town's motion for a preliminary injunction. The judge reasoned that,

---

[13] Through its request for declaratory judgment, the town sought to establish that the July 9 notice of intent complied with G. L. c. 61, § 8; the offer in the purchase and sale agreement was a bona fide offer; the town's option vested on July 10, 2020; the town held an irrevocable option to purchase the forest land for the length of the statutory period; the town's time period in which it needed to exercise its option was tolled until the end of Governor Baker's March 10, 2020 declaration of a state of emergency related to the COVID-19 pandemic; the trust and the railroad were prohibited from alienating the forest land or converting its use from forest land until the town's option expired; the town was entitled to conveyance of the forest land from the trust; and the trust's assignment of its beneficial interest to the railroad constituted a sale of forest land that separately triggered the town's option.

although the town was entitled to an option under G. L. c. 61, § 8, it was not clear whether or when the option period had been triggered, because the July 9 notice of intent was defective for the reasons identified by the town.  The judge did not decide whether the subsequent restructured transaction triggered the town's option under G. L. c. 61, § 8.  Nor did she reach the question of preemption.  The judge also concluded that there was no irreparable harm, because the parties had agreed to work cooperatively to prepare a stipulation to maintain the status quo while the STB proceeding and the Land Court case were pending.  Finally, the judge referred the parties to mediation.

Through mediation, the parties then reached a settlement, which the town's board of selectman (board) approved on January 25, 2021.  In broad strokes, the settlement agreement provided that (1) the parties would stipulate to the dismissal with prejudice of the Land Court suit, (2) the railroad would withdraw its petition to the STB, (3) the town would purchase about forty acres of forest land and twenty-four acres of nonforest land for $587,500, plus the cost of any roll-back taxes that might be due, (4) subject to a vote at town meeting, the railroad would donate twenty acres of nonforest land at 363 West Street to the town or its designee, (5) all the remaining land would remain in the trust's ownership, free from G. L.

c. 61, and (6) the town would waive its option under c. 61, as well as its eminent domain rights under G. L. c. 79.[14]

As agreed, the parties filed a joint stipulation of dismissal with prejudice in the Land Court case on February 10, 2021. The settlement agreement was not filed with the Land Court, nor were its terms otherwise submitted to the judge. The board took the position that the previous town meeting vote authorizing the purchase of all of the forest land implicitly authorized the purchase of only a subset of that land.

The citizens then filed the Superior Court case. The citizens' complaint asserted three counts, the nature and ultimate disposition of which were as follows:

Count I was brought against the board and sought to enjoin the board from expending funds under the settlement agreement. The citizens brought this claim under G. L. c. 40, § 53 (allowing ten taxpayers to enjoin a town from raising or spending money without legal or constitutional authorization);

---

[14] The settlement agreement also contained a severability provision, which stated as follows:

"The provisions of this [a]greement are severable and should any provision be deemed for any reason to be unenforceable the remaining provisions shall nonetheless be of full force and effect; provided however, that should any provision be deemed unenforceable by a court of competent jurisdiction, the parties shall negotiate in good faith to cure any such defect(s) in the subject provision(s)."

G. L. c. 44, § 59 (allowing a taxpayer to compel a municipality "to conform to [chapter 44]," which relates to municipal finance generally); and G. L. c. 214, § 3 (10) (allowing ten taxpayers to bring an action to "enforce the purpose or purposes of any gift or conveyance which has been or shall have been made to and accepted by any . . . town"). After cross motions for judgment on the pleadings, the citizens prevailed on count I on the ground that the authority granted to the board in the special town meeting required acquisition of the entire parcel of forest land and did not allow the town to acquire only the subset to which it had agreed under the settlement agreement. The Superior Court judge explained the meaning and consequences of her ruling as follows:

> "[A]lthough the terms of the [s]ettlement [a]greement are legal (including the [b]oard's agreement to waive the [o]ption), the [b]oard exceeded its authority when it unilaterally entered into that agreement without [t]own [m]eeting approval of the reduced acquisition. Therefore, the [s]ettlement [a]greement is not effective. The [b]oard might not hold the required [t]own [m]eeting or might fail to obtain enough votes to approve the acquisition. In either case, the [s]ettlement [a]greement would fail to take effect, meaning that the [r]ailroad would retain the land and the [t]own would retain its money and the right to continue attempting to enforce the [o]ption. Until the reduced acquisition is approved by [t]own [m]eeting, the agreement is not effective, and the [t]own may (but is not required to) attempt to enforce the [o]ption." (Footnote omitted.)

No one has appealed from this aspect of the judgment. As a matter of practical interest, we note that the board's

subsequent request for approval to fund the purchase of land as provided in the settlement agreement was rejected at a town meeting in March 2022.

Count II was asserted against the board and the railroad, and sought a declaration that the board's release of its G. L. c. 61 option as part of the settlement agreement was void, that the town's c. 61 rights remain enforceable, that the restructured transaction by which the railroad obtained control of the trust and its beneficial interest triggered the town's option, that all forest land held by the trust be transferred to the town with no easements, and that the railroad be prevented from alienating the forest land or converting any of it from its current use. Count II was brought under G. L. c. 40, § 53, and G. L. c. 214, § 3 (10), as well as G. L. c. 40, § 3 (authorizing towns to hold and convey property through their selectmen), and G. L. c. 231A, § 1 (the declaratory judgment statute). The judge dismissed count II on the ground that the citizens lacked standing to pursue the relief sought. The citizens' appeal of this ruling is before us.

Count III was asserted against the board and sought a declaration that use of G. L. c. 61 forest lands for nonparkland purposes constitutes illegal harm to the environment. This count was brought under G. L. c. 40, § 53; G. L. c. 214, §§ 3 (10) and 7A (allowing ten citizens to bring claims to prevent

damage to the environment); G. L. c. 45, § 7 (allowing ten taxpayers to restrain the erection of a building in a park); and mandamus. The judge dismissed count III on the ground that the town never acquired the forest land. The citizens do not challenge this portion of the judgment on appeal. Additional details of the procedural history in the Superior Court case that are not pertinent to this appeal are set forth in the margin.[15]

---

[15] The citizens filed a motion for preliminary injunction, which was denied by a Superior Court judge on March 11, 2021. A single justice of this court reversed, concluding that the citizens had demonstrated a reasonable likelihood of success on their claim that the board had acted without authority to purchase the forest land described in the settlement agreement, and enjoining the town from "issuing any bonds, making any expenditures, paying any costs, or transferring any property interests pursuant to the [s]ettlement [a]greement."

On June 3, 2021, all parties separately moved for judgment on the pleadings. Before these cross motions could be resolved, the citizens filed an emergency motion to preserve status quo on September 9, 2021, in response to learning that the railroad had resumed clearing trees from the forest land. A second Superior Court judge, who presided over all subsequent events in this case, issued a temporary restraining order the next day, pending further action by the court; the temporary restraining order became a preliminary injunction on September 24, 2021. The railroad and the trust appealed, and a second single justice of this court declined to intervene because the Superior Court judge was then considering dispositive motions.

The Superior Court judge ruled on the cross motions for judgment on the pleadings on November 10, 2021. As we describe in the text, the judge issued judgment in favor of the citizens on count I, but against the citizens on counts II and III. Nevertheless, the judge extended the temporary injunction against the railroad defendants for sixty days to give the town time to "decide whether to seek the [t]own [m]eeting

In light of the Superior Court judge's ruling that the settlement agreement was not effective because the board had acted outside the authority given by the town meeting, the town then filed in the Land Court a motion pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), to vacate the stipulation of dismissal that had been filed pursuant to the settlement agreement. In essence, the town argued that the Superior Court judge's ruling that the settlement agreement was ineffective constituted an extraordinary circumstance warranting reinstatement of the Land Court case.

The citizens advanced in the Land Court case on different, but related, fronts. To begin with, the citizens sought an interdepartmental assignment and transfer of the Land Court case to the Superior Court for consolidation with the Superior Court case. The citizens also moved to intervene in the Land Court case, both as a matter of right and permissively. See Mass. R. Civ. P. 24, 365 Mass. 769 (1974). They also moved to join the town's motion to vacate the stipulation of dismissal. The Land Court judge deferred consideration of these motions until after she decided the town's motion to vacate, a decision that

authorization necessary to validate the [s]ettlement [a]greement or to take the necessary steps to proceed with its initial decision to exercise the [o]ption for the entire [p]roperty."

prompted the citizens to file a motion for expedited treatment of their motion to intervene.  That motion was denied.

After a hearing, the Land Court judge denied the town's motion to vacate.  The core of the judge's reasoning was that, unlike Bowers v. Board of Appeals of Marshfield, 16 Mass. App. Ct. 29 (1983), which involved similar circumstances, the parties in this case did not file an agreement for judgment with the court, but rather filed only a stipulation of dismissal with prejudice without submitting the terms of the settlement agreement to the court.  The judge reasoned that, even accepting that the town acted outside its authority in entering into the settlement agreement, it was beyond dispute that the town had the authority to stipulate to the dismissal of the Land Court case that the town itself had filed.  Accordingly, the judge concluded that there were no extraordinary circumstances that warranted vacating the stipulation of dismissal.  It bears noting that the Land Court judge understood the motion to vacate to present only the narrow issue whether exceptional circumstances existed to vacate the stipulation of dismissal; she did not consider the validity or enforceability of the settlement agreement to be before her.  The town no longer

challenges the order denying its motion to vacate the stipulation of dismissal.[16]

Having denied the motion to vacate, the Land Court judge then denied the citizens' motion to intervene and to join the town's motion to vacate on the ground that it was moot. The citizens' appeal of this order is before us, as is the order denying the citizens' motion to expedite hearing on their motion to intervene.[17]

---

[16] Initially, the town vigorously pursued relief from the Land Court judge's order denying the motion to vacate. The town filed a timely notice of appeal and also sought an injunction pending appeal to prevent any further destruction or alteration of the forest land, a request that was joined by the citizens. The Land Court judge denied the request for injunctive relief on the ground that the filing of the stipulation of dismissal with prejudice had closed the case, and so the town could not demonstrate a likelihood of success on the merits. The town and the citizens appealed to a single justice of this court, who upheld the denial of the motions on the grounds that neither party had demonstrated that the Land Court judge "likely erred." The town then moved to voluntarily dismiss its appeal from the order denying its motion to vacate, and that motion was allowed on May 2, 2022. On May 5, 2022, the citizens filed a motion asking the Land Court judge to reconsider both her order allowing the town's motion for voluntary dismissal and her order denying the citizens' motion to intervene. The judge denied that motion the next day, and the citizens filed an amended notice of appeal to include the order denying their motion for reconsideration.

[17] The parties are also engaged in litigation in the United States District Court for the District of Massachusetts, where the railroad and the trust have sued the town over its attempt to take the forest land by eminent domain, which they claim is preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101 et seq. That litigation is ongoing.

Discussion.  Despite the complicated path that has led to these appeals, the issues at this point are only two:  first, whether the citizens have standing to pursue a declaration that the settlement agreement is void and unenforceable (count II of the complaint in the Superior Court case); and second, were the citizens' motions (a) to intervene and to join the town's motion to vacate, and (b) to expedite hearing of those motions in the Land Court case properly denied.

1.  Standing.  The citizens assert three theories of standing to pursue a declaration that the settlement agreement is void and unenforceable.  Because the issue of standing was decided on cross motions for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), our review is de novo.  See Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 726 (2013).  We discuss each of the citizens' theories in turn.

a.  Taxpayer standing under G. L. c. 40, § 53.  Since 1847, see St. 1847, c. 37, the Legislature has given groups of ten or more taxable inhabitants of a town the right to sue to restrain the unlawful or unconstitutional exercise of the town's power to raise or expend funds:

> "If a town, . . . or any of its officers or agents are
> about to raise or expend money or incur obligations
> purporting to bind said town . . . for any purpose or
> object or in any manner other than that for and in which
> such town . . . has the legal and constitutional right and
> power to raise or expend money or incur obligations, the
> supreme judicial or superior court may, upon petition of

>      not less than ten taxable inhabitants of the town . . .
>      restrain the unlawful exercise or abuse of such corporate
>      power."

G. L. c. 40, § 53.

The basic provision of the statute is that the "town or its officers must be about to raise or expend money or incur obligations" in an unlawful manner.  North v. City Council of Brockton, 341 Mass. 483, 484 (1960).  Equitable principles do not confer on taxpayers the right to sue "to restrain cities and towns from carrying out invalid contracts, and performing other similar wrongful acts."  Pratt v. Boston, 396 Mass. 37, 42 (1985), quoting Fuller v. Trustees of Deerfield Academy, 252 Mass. 258, 259 (1925).  Instead, taxpayer plaintiffs must show a statutory foundation for standing apart from G. L. c. 40, § 53, in order to challenge a town's entering into a contract or settlement.  See Pratt, supra at 42-44.

It is important at this point to focus on the difference between count I and count II of the Superior Court complaint. In count I, the citizens sought to enjoin the town from expending funds under the settlement agreement because the expenditure had not been authorized at a town meeting.  This type of allegation falls easily within the ambit of G. L. c. 40, 53, as the Superior Court judge determined when she ruled in favor of the citizens on count I.

By contrast, in count II, the citizens sought declarations that the board's waiver of its G. L. c. 61 option as part of the settlement agreement was void, that the town's c. 61 rights remain enforceable, that the restructured transaction by which the railroad obtained control of the trust and its beneficial interest triggered the town's option, that all forest land held by the trust be transferred to the town with no easements, and that the railroad be prevented from alienating the forest land or converting any of it from its current use.  None of these forms of relief can be characterized as the raising or expenditure of funds or as the incurring of obligations by the town and, accordingly, G. L. c. 40, § 53, did not give the citizens standing to pursue them.

b.  Standing under G. L. c. 231A, § 1.  The citizens also claim that the declaratory judgment statute, G. L. c. 231A, § 1, independently gives them standing to pursue the relief they seek in count II.  But c. 231A, § 1, "does not in and of itself provide the plaintiffs with the 'standing' required to maintain" a taxpayer suit such as this one.  Pratt, 396 Mass. at 43.  Instead, the citizens have standing under the declaratory judgment statute only if they "can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred."  Revere v. Massachusetts Gaming Comm'n, 476 Mass. 591, 607 (2017).  Thus, fundamentally,

the standing inquiry under the declaratory judgment statute depends on whether the citizens are seeking in count II to protect a cognizable interest under either G. L. c. 40, § 53, or G. L. c. 61.  As we have already said, they do not have such a cognizable interest under G. L. c. 40, § 53.  And so we turn to c. 61.

General Laws c. 61 reflects a legislative interest in promoting and maintaining forest land, which it seeks to achieve through an incentive structure of reduced taxation on landowners who submit their forest land to regulation under the statute.  Although a town's citizens clearly have an interest -- as that term is colloquially understood -- in the preservation of green space, including forest land, that generalized interest in protecting the environment, as laudable as it is, is not enough to confer standing in the absence of cognizable injury.  See Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 138, 141 (2000) (interest in protecting environment, in absence of cognizable injury, is too generalized to confer standing).  The statute creates a voluntary tax program by which landowners can agree to preserve and maintain forest land in order to receive advantageous tax treatment, in exchange for which the town receives certain rights should the land be transferred or otherwise fail to continue to qualify.  Individual taxpayers whose land is not subject to c. 61 have been given no rights

under the statutory scheme.  Contrast G. L. c. 61, §§ 2, 3
(creating procedures for landowner to challenge land
classification and tax assessment).

c.  Standing to pursue mandamus.  The citizens argue that
the town's waiver of its option constituted an illegal
assignment of the option, and as such they have standing to
pursue a mandamus action against the assignment.  Setting aside
the fact that the citizens did not raise this argument below
with respect to count II of the Superior Court complaint and it
is accordingly waived, we note that the argument is based on a
faulty premise.

Although it is true, as the citizens argue, that G. L.
c. 61, § 8, does not allow a town to assign its option to a
private for-profit organization, but only to nonprofit
conservation organizations, the Commonwealth, or any of its
political subdivisions, it does not follow that the town's
waiver of its option in this case, simply because it occurred
within the context of the settlement agreement with the railroad
and trust -- neither of which is a nonprofit conservation
organization -- constituted an illegal assignment.  A waiver is
the "intentional relinquishment of a known right,"
BourgeoisWhite, LLP v. Sterling Lion, LLC, 91 Mass. App. Ct.
114, 119 (2017); it is not a transfer of that right to another.

By contrast, the hallmark of an assignment is the assignor's transfer of a right to an assignee. See H.J. Alperin, Summary of Basic Law § 5:99, at 1190 (5th ed. 2014). Here, the town did not transfer its option to anyone under the settlement agreement, which by its plain language provided only for a waiver of the option:

> "Waiver of Right of First Refusal. The [t]own acknowledges that it waives any and all claims and/or rights to acquire any property subject to this [a]greement by right of first refusal under [c]hapter 61 or by eminent domain under [c]hapter 79 of the Massachusetts General Laws."

2. Motion to intervene. a. Mootness. In order to understand why the citizens' motion to intervene in the Land Court case should not have been denied on the ground that it was moot, we begin by setting out the relevant chronology of events.

On November 4, 2021, the Superior Court judge issued her decision on the parties' cross motions for judgment on the pleadings, ruling in the citizens' favor that "the [b]oard exceeded its authority when it entered into the [s]ettlement [a]greement without [t]own [m]eeting authorization." No one challenges this ruling.[18] Also never appealed are the Superior Court judge's clarification rulings that the settlement agreement could not take effect until approved by a town meeting

---

[18] The town moved for clarification on December 1, 2021, and that motion was allowed in part on December 14, 2021.

and that, without such town meeting approval, the town retained its right to attempt to enforce its option.

On December 30, 2021, approximately two weeks after the Superior Court judgment was clarified, the town filed in the Land Court, pursuant to Mass. R. Civ. P. 60, a motion to vacate the stipulation of voluntary dismissal on the ground that the Superior Court judgment invalidating the settlement agreement was an extraordinary circumstance warranting such relief.

On January 18, 2022, the railroad and the trust filed their opposition to the motion to vacate. Two days later, on January 20, the citizens filed a motion to intervene in the Land Court case and to join the town's motion to vacate the stipulation of dismissal. The citizens' motion sought to effectuate the favorable judgment they had obtained on count I of their complaint in the Superior Court, including -- but not limited to -- the injunction the citizens had obtained to preserve the forest land. In addition, the citizens sought to vacate the stipulation of dismissal, to obtain a preliminary injunction against land clearing pending disposition of the claim to vacate the dismissal, to obtain a declaratory judgment that any settlement between the town and the railroad and trust could not include the waiver of the town's G. L. c. 61 rights without town meeting authorization, and to obtain a declaration that the town's ultimate purchase price of the forest land be reduced due

to the railroad's unlawful clearing of the land during the pendency of the Superior Court case and the single justice's injunction.

On January 21, 2022, the town filed its reply brief in support of the motion to vacate. On January 24, 2022, the railroad and the trust filed a sur-reply brief. In other words, the citizens' motion was fully briefed by January 24, 2022, when the Land Court judge held a hearing on the town's motion to vacate the stipulation of dismissal.

At the January 24 hearing, the Land Court judge heard argument from the town, the railroad, and the trust on the motion to vacate, but did not permit argument by counsel for the citizens. The judge then took the town's motion to vacate under advisement, deferring the submission of oppositions and a hearing on the citizens' motion to intervene until after she decided the motion to vacate. The next day, the citizens filed a motion seeking an expedited hearing on their motion to intervene and to join, which the Land Court judge denied two days later on the ground that it was untimely.[19]

---

[19] The judge reasoned that the citizens should have filed their motion to intervene several days earlier instead of first seeking interdepartmental transfer. Although the judge failed to identify any prejudice from the timing, we cannot say that she abused her wide discretion in denying the motion to expedite on timeliness grounds.

The following day, the Land Court judge denied the town's motion to vacate the stipulation of dismissal.  The judge's core reasoning was that even if the board did not have authority to enter into the settlement agreement on the terms that it did without town meeting approval, the board had authority to stipulate to the dismissal of its Land Court case.  Central to the judge's reasoning was the fact that neither the settlement agreement, nor its terms, had ever been put before the court.

The Land Court judge then denied the citizens' motion to intervene on the ground that it was moot because the judge had denied the town's motion to vacate the stipulation of dismissal.[20]

As should be clear from the above recitation, the fundamental problem here is that the Land Court judge conflated the citizens' right to enforce the Superior Court judgment they had obtained with the town's motion to vacate the stipulation of dismissal in the Land Court case.  Although the motions were

---

[20] The Land Court judge's order denying the motion to vacate did not mention the citizens' pending motion to intervene. Instead, the order on that motion appears in a docket entry dated February 1, 2022:

> "The court today received an inquiry as to whether the court would be issuing a decision on the merits of the citizens' motion to intervene.  However, that motion is moot since in a decision issued on January 28, 2022, the court declined to vacate the stipulation with prejudice filed by the parties to this case."

conceptually related, they were not mutually dependent for at least two reasons. First, the relief they sought was not coterminous and, second, the citizens' right to protect the Superior Court judgment was independent of the town. The Superior Court judgment was obtained through the citizens' exercise of their statutory right as ten or more taxpayers under G. L. c. 40, § 53. The citizens' entitlement to enforce that favorable judgment did not depend on whether the town had the authority to stipulate to the dismissal of its own claims in the Land Court. The stipulation of dismissal did not -- and could not -- extinguish the citizens' claims or judgment under G. L. c. 40, § 53. See Jarosz v. Palmer, 436 Mass. 526, 529 (2002) ("a stipulation of dismissal with prejudice is not the equivalent of a final judgment on the merits for the purposes of issue preclusion"). Not only were the citizens not parties to the stipulation of dismissal, they were not before the Land Court when the stipulation of dismissal was filed (nor is there any claim that the citizens should have been), nor had the validity of the settlement agreement been placed before the Land Court. Thus, to the extent that the citizens sought to intervene in the Land Court suit to effectuate the Superior Court judgment by having the Land Court stipulation of dismissal

vacated on the ground that the settlement agreement was not effective, the citizens' motion to intervene was not moot.[21]

b. <u>Merits of motion to intervene</u>. The citizens argue that we should decide the merits of their motion to intervene even though the Land Court judge did not reach them. Although there may be limited situations in a civil case where an appellate court may decide the merits of an issue in the first instance, this is not one of them. Both permissive intervention and intervention as of right entail factual assessments that are best left to determination by the trial judge in the first instance.

Intervention is governed by Mass. R. Civ. P. 24, which allows nonparties to intervene in an action, either as of right under subsection (a), or permissively under subsection (b). As to intervention as of right, the proposed intervener

"must satisfy four criteria:  (1) the application must be timely;[22] (2) the applicant must claim an interest relating

---

[21] We note that after the citizens' motion to intervene was denied, the citizens' request for interdepartmental transfer was denied on the ground that the Land Court case was closed. In the event the Land Court judge permits the citizens to intervene in the Land Court suit, it seems to us that it would make sense to reconsider the citizens' request for interdepartmental transfer so as to avoid any inconsistency between the Superior Court judgment and its effect on the claims asserted in the Land Court case.

[22] The railroad and the trust make much of the fact that the citizens' motion to intervene was filed after the stipulation of dismissal in the Land Court case.  "[P]ostjudgment motions to intervene, whether as of right or permissive, are seldom

to the property or transaction which is the subject of the litigation in which the applicant wishes to intervene; (3) the applicant must show that, unless able to intervene, the disposition of the action may, as a practical matter, impair or impede his ability to protect the interest he has; and (4) the applicant must demonstrate that his interest in the litigation is not adequately represented by existing parties."

Bolden v. O'Connor Cafe of Worcester, Inc., 50 Mass. App. Ct. 56, 61 (2000).  Contrary to the citizens' argument, intervention as of right is not purely a question of law.  "A judge has discretion in determining whether an intervening party has demonstrated facts that entitle him or her to intervention as of right."  Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 217 (2011).  It is only after the subsidiary facts have been determined that an appellate court then determines as a matter of law whether the circumstances are sufficient to meet the requirements of intervention as of right.  See id.

---

timely . . . .  The proposed postjudgment intervener must accordingly not only justify its failure to intervene at an earlier stage of the action, but must also establish that it has not just an interest, but a compelling one, in the litigation." Bolden v. O'Connor Cafe of Worcester, Inc., 50 Mass. App. Ct. 56, 61 (2000).  Here, there was no reason nor basis for the citizens to intervene until the parties to the Land Court case entered into the settlement agreement and filed their stipulation of dismissal, and after the citizens obtained the favorable Superior Court judgment.  See McDonnell v. Quirk, 22 Mass. App. Ct. 126, 133 (1986) ("If the underlying action takes an unexpected turn, we perceive no reason why the third party cannot intervene to protect its position").

Permissive intervention is also a fact-dependent decision conferred to a judge's sound discretion, and is governed by Mass. R. Civ. P. 24 (b), which provides:

> "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the Commonwealth confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

See Matter of the Liquidation of Am. Mut. Liab. Ins. Co., 417 Mass. 724, 734-736 (1994) (creditors had no standing to intervene in settlement agreement between bankruptcy receiver and other creditors).  "[A] judge might consider such factors as a party's delay in seeking intervention (and the circumstances of such a delay), the number of intervention requests or likely intervention requests, the adequacy of representation of the intervening party's interests, and other similar factors." Fremont Inv. & Loan, 459 Mass. at 219.

Although we are not in a position to decide the merits of the citizens' motion to intervene in the first instance, the following observations may be helpful on remand.  First, we acknowledge the general rule that "postjudgment motions to intervene, whether as of right or permissive, are seldom timely," but stress that the rule has little application on the facts of this case because the basis for intervention did not

arise until the town settled and stipulated to the dismissal of the Land Court case.  See Bolden, 50 Mass. App. Ct. at 61.  This is a situation where "the underlying action takes an unexpected turn" at its very end, and accordingly, there is "no reason why the third party cannot intervene to protect its position." McDonnell v. Quirk, 22 Mass. App. Ct. 126, 133 (1986).

Second, we recognize that the citizens' road to relief in the Land Court case has been made difficult by the fact that the town has not pursued an appeal of the order denying its motion to vacate the stipulation of dismissal.  But it is nonetheless important to ensure that events and decisions in the Land Court case not make toothless the judgment and rulings in the Superior Court case, particularly in a matter of public significance such as this one and where the citizens have not been given an opportunity to be heard.  On remand, the Land Court judge should keep in mind that the Superior Court has determined some of the substantive issues on the merits, that the citizens are entitled to the benefit of those favorable rulings, that the rulings are binding on the town, the railroad, and the trust (all of whom were parties in the Superior Court case and have not appealed), and that those rulings are entitled to full respect and force. The Land Court judge should ensure that her rulings are not inconsistent or unfair in light of rulings that have been made in a sister department of the trial court.  These considerations

will come into special play when deciding the citizens' motion to vacate the stipulation of dismissal.

Conclusion.  In the Superior Court case, the judgment, as clarified by the order dated December 14, 2021, is affirmed.  In the Land Court case, the order denying the citizens' motion to expedite hearing on their motion to intervene is affirmed.  The order denying the citizens' motion to intervene as moot is vacated, and the matter is remanded to the Land Court for further proceedings consistent with this opinion, including consideration of the citizens' motion to join the town's motion to vacate the stipulation of dismissal.[23]

So ordered.

---

[23] The defendants in the Land Court case have requested double costs and attorney's fees in connection with the appeal. That request is denied.